UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ASHANTA MARSHALL,

                 Plaintiff,

    -against-

AFRICA MARSHALL,

                 Defendant.

--------------------------------------------------------X

**REPORT AND RECOMMENDATION
08 CV 1420 (KAM)(LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Ashanta Marshall, brings this *pro se* action against his younger brother, Africa Marshall, under the Copyright Act, *17 U.S.C. § 101, et seq.*, Section 43(a) of the Lanham Act (hereinafter "Section 43(a)"), *15 U.S.C. § 1125(a)*, Section 51 of the New York Civil Rights Law (hereinafter "Section 51"), and New York common law. This action arises out of defendant's internet promotion and sale of instructional hairstyling videos featuring plaintiff. Defendant moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and seeks to dismiss all but plaintiff's copyright infringement claim. The Honorable Kiyo A. Matsumoto referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion for summary judgment should be granted in part and denied in part.

1

# BACKGROUND

Plaintiff is a consultant and stylist in the hair industry who owns two businesses: the Abode Salon and Hair To Go. (Docket Entry 84, Affidavit of Robert Weiner ("Weiner Aff."), at Exhibit E.) Plaintiff started Hair To Go in the early 1990's and opened up his salon in 1998. (Id.) Plaintiff hired defendant, his brother, to assist him at Hair To Go around 2000. (Id.) Defendant assisted plaintiff with the production of instructional hairstyling videos which featured plaintiff teaching hairstyling techniques. (Docket Entry 84-9, Defendant's Statement in Compliance with Rule 56.1 ("Def.'s 56.1 Statement"), ¶2.[1]) Plaintiff claims that he created, directed, and financed the videos that defendant filmed. (Docket Entry 8, Amended Complaint ("Am. Compl."), ¶¶58-60.) During the course of their business relationship, plaintiff and defendant produced nineteen instructional videos.[2] (Def.'s 56.1 Statement, ¶8.) Plaintiff sold the instructional videos over the internet through the websites hairvideomall.com ("hairvideomall"), hairtogostore.com ("hairtogostore"), and hairtogo.8m.com ("hairtogo") for $59.99 each. (Affidavit of Rachel Hundley ("Hundley Aff."), at Exhibit C; Am. Compl. ¶38.) Defendant claims that he and plaintiff jointly own the videos. (Docket Entry 27, Answer to Amended

---

[1] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant submitted a statement of undisputed facts pursuant to Local Rule 56.1(a). (Def.'s 56.1 Statement.) Plaintiff submitted a response to defendant's 56.1 statement pursuant to Local Rule 56.1(b). (Docket Entry 84-13, Plaintiff's Reply to Defendant's Rule 56.1 Statement ("Pl.'s 56.1 Statement").) The Court may deem the facts in defendant's Rule 56.1 statement admitted, unless specifically controverted by plaintiff's counter-statement. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

[2] The nineteen instructional hair videos at issue in this case are: Remove it, Perfect Style, Perfect Style 2, Girl Curls, Cut & Style, Cut & Style 2, Cut & Style 3, Intra-Blend Extensions, Perfect Hair Extensions, Micro-Lace Extensions, Dream Hair Extensions, Custom Fusion, Inter-Twist Extensions, Glamour Hair Extensions, Gorgeous Hair Extensions, Long Hair Cuts, Long Hair Cuts 2, Fabulous Hair Illusions, and Cut & Style 4. (Am. Compl., ¶74.)

Complaint ("Answer"), ¶28.) Plaintiff claims that he is the sole owner of the videos under the employment agreement he and defendant entered into. (Weiner Aff., at Exhibit E.)

The business relationship between plaintiff and defendant ended around February 2005. (Def.'s 56.1 Statement, ¶3.) As payment for his services, plaintiff gave defendant a check for three thousand dollars. (Am. Compl., ¶67.) The parties dispute whether the check was ever cashed by defendant. (Id.; Answer, ¶67.) Plaintiff continued to sell the instructional videos after his business relationship with his brother ended. (Def.'s 56.1 Statement, ¶4.) Plaintiff contends that on or about July 5, 2005, defendant unlawfully entered the Abode Salon and stole copies of the nineteen instructional videos, a computer hard drive containing business records, and a copy of the employment agreement between plaintiff and defendant. (Am. Compl., ¶69.) Defendant denies this allegation. (Answer, ¶69.)

Over the next three years, defendant sold the instructional videos through various websites. Defendant began to sell digital versions of the instructional videos through his website hairvideopass.com ("hairvideopass") in October 2005. (Def.'s 56.1 Statement, ¶6.) Defendant embedded a link to hairvideopass on plaintiff's website hairvideomall. (Id.) Visitors to hairvideopass could subscribe to all nineteen videos for a monthly fee of $29.99 to $49.99. (Am. Compl., ¶85.) Defendant set up an account with Paypal to collect the proceeds from the sales. (Def.'s 56.1 Statement, ¶7.) Paypal suspended defendant's account at plaintiff's request in October 2005. (Id.)

Between October 2005 and February 2006, plaintiff registered eight of the nineteen videos with the United States Copyright Office.[3] (Id. at ¶5.) Defendant registered all nineteen videos with the United States Copyright Office as one individual copyrighted work in September 2007.

---

[3] Plaintiff registered the following eight videos with the Copyright Office: Perfect Hair Extensions, Cut & Style 4, Cut a Style, Remove It!, The Intra-Blend Technique, Long Hair Cuts 2, Intertwist Extensions, and Dreamhair extension. (Am. Compl., ¶73.)

3

(Id. at ¶8.) In 2007, defendant attempted to sell copies of the instructional videos for $9.99 each on lulu.com ("lulu") and brightcove.com ("brightcove"). (Am. Compl., ¶88; Answer, ¶88.) On December 13, 2007 defendant began to sell the instructional videos through an advertisement on craigslist.com ("craigslist"), charging $20.00 per video. (Hundley Aff., at Exhibit B.) In early 2008, defendant also uploaded the nineteen videos to thepiratebay.org ("piratebay"), a bit-torrent site which allows visitors to download video, audio and text files for free. (Am. Compl., ¶45; Answer, ¶45.)

Defendant launched a new website, hairvideostore.com ("hairvideostore"), in February 2008 to sell the instructional videos. (Def.'s 56.1 Statement, ¶9.) Defendant sold the videos for $39.99 each on hairvideostore. (Hundley Aff., at Exhibit B.) Hairvideostore contained various images of plaintiff styling hair and featured a layout and content similar to that of hairvideomall. (Id.) To promote hairvideostore, defendant uploaded three of the instructional videos to youtube.com ("youtube") and superimposed the web address for hairvideostore over the videos. (Id.) In March 2008, after the instant civil action was filed in state court, the webhost for hairvideostore shut down defendant's website upon plaintiff's request that the unauthorized content be removed. (Def.'s 56.1 Statement, ¶10.)

Plaintiff claims that he suffered significant emotional and physical trauma as a result of defendant's online promotion and sale of the instructional videos. Plaintiff also claims that he suffered emotional distress when on the morning of February 12, 2008 defendant's roommate made a threatening phone call to him. (Am. Compl., ¶92.) Defendant denies this allegation. (Answer, ¶92.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 13, 2008 in Civil Court of the City of New York, Kings County. Defendant removed the action to this Court based on federal question jurisdiction and shortly thereafter moved to dismiss the complaint. (Docket Entries 1 and 3.) Plaintiff filed an amended complaint, and as a result, defendant's motion to dismiss was withdrawn without prejudice. (Docket Entries 8 and 16.) Plaintiff then moved for a restraining order to force defendant to remove all videos and images of plaintiff from the various websites. (Docket Entry 10.) I recommended that plaintiff's motion should be denied because the question remained whether the copyrights in the videos belonged solely to plaintiff or were jointly held by plaintiff and defendant. (Docket Entry 17.) The Honorable Allyne R. Ross adopted my Report and Recommendation. (Docket Entry 21.)

Defendant answered the amended complaint and asserted three counterclaims against plaintiff. (Docket Entry 27.) Defendant claims that: 1) he is entitled to a joint copyright interest in the instructional videos; 2) he is entitled to a joint interest in all trademark and trade dress rights associated with Hair To Go; and 3) plaintiff was unjustly enriched. (Answer, pp. 17-24.) Defendant seeks a declaratory judgment and damages equal to half of the profits that plaintiff earned from the sale of the videos from January 1, 2005 to the present. (Id. at pp. 23-24.) Plaintiff answered the counterclaims and later amended his answer to the counterclaims with leave of the Court. (Docket Entries 28 and 42.) The parties then conducted discovery.

Defendant now moves for summary judgment on four of the five causes of action in plaintiff's amended complaint.[4] (Docket Entry 84, Notice of Motion for Summary Judgment.) Defendant does not seek summary judgment on plaintiff's copyright infringement claim. (Id.)

---

[4] Defendant provided plaintiff with the requisite Notice to a Pro Se Litigant, pursuant to Local Civil Rule 56.2. (Docket Entry 84-10.)

Plaintiff opposes the motion and defendant has replied. (Docket Entry 84-12, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."); Docket Entry 84-14, Defendant's Reply in Further Support of Motion for Summary Judgment ("Def.'s Reply").)

## DISCUSSION

## I.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted)).

## II.    New York Civil Rights Law § 51 Claim

Plaintiff claims that defendant's use of his name and image without his consent on hairvideostore and youtube violated his right of privacy and publicity under Section 51 of the New York Civil Rights Law.[5] (Am. Compl., ¶14.) A defendant is liable under Section 51 when he or she uses a plaintiff's "name, portrait, picture or voice . . . within this state for advertising purposes or for the purposes of trade without the written consent first obtained." N.Y. CIV. RIGHTS LAW § 51. The statute applies "to 'cases where the plaintiff generally seeks publicity . . . but has not given written consent for a particular use' or where 'the defendant has otherwise exceeded the limitations of the consent.'" Myskina v. Conde Nast Publ'ns, Inc., 386 F. Supp. 2d

---

[5] Plaintiff's amended complaint references Sections 50 and 51 of the New York Civil Rights Law. (Am. Compl., ¶¶3, 4, 15.) Section 50 criminalizes violations of the right of privacy, whereas Section 51 provides a private right of action for civil litigants. N.Y. CIV. RIGHTS LAW §§ 50 and 51.

409, 414 (S.D.N.Y. 2005) (quoting Stephano v. News Group Publ'ns, Inc., 64 N.Y.2d 174, 183 (1984)). "Although plaintiffs suing under Sections 50 and 51 often couch their claims in a right to privacy, '[t]he right which the statute permits the plaintiff to vindicate [in such circumstances] may, perhaps, more accurately be described as a right of publicity.'" Id. New York does not recognize any right to publicity other than that created by Section 51. Pirone v. MacMillan, Inc., 894 F.2d 579, 585 (2d Cir. 1990).

The parties do not dispute that in 2005 and 2008 defendant created the websites hairvideopass and hairvideostore to sell the instructional videos featuring plaintiff. Plaintiff objects to several different uses of his image by defendant on these websites. The record shows that plaintiff's image appears on the covers of the videos sold on hairvideostore as well as in various photographs on the website. (Hundley Aff., at Exhibit B.) Moreover, defendant posted clips from the videos, which feature plaintiff styling hair, on youtube to advertise defendant's website hairvideostore. (Id.) Defendant concedes that he used plaintiff's name and image without consent on hairvideopass and hairvideostore to sell the instructional videos. (Def.'s Reply, p. 5.) However, defendant argues that plaintiff's claim under Section 51 fails as a matter of law for two reasons. (Docket Entry 84-11, Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), pp. 3-5.) First, defendant contends plaintiff's claim is time-barred by the one year statute of limitations imposed by Section 215(3) of the New York Civil Practice Law and Rules. Second, defendant argues that, even if plaintiff's claim were not time-barred, defendant's alleged conduct falls within one of the statutory exceptions to liability under Section 51.

## A.    Statute of Limitations

The statute of limitations for a claim under Section 51 is one year. N.Y. C.P.L.R. 215(3). The statute of limitations accrues "at first publication -- generally interpreted as when the publication first goes on sale to the public." Cuccioli v. Jekyll & Hyde Neue Metro. Bremen Theater Produktion GmbH & Co., 150 F. Supp. 2d 566, 573 (S.D.N.Y. 2001). Under the single publication rule, "each subsequent publication or distribution of challenged material" does not set the statute of limitations to run anew. Id. In other words:

> the first time that an offending item is published, the one-year statute of limitations set out in New York Civil Practice Law and Rules § 215 begins to run and the dissemination of that same offending item thereafter does not give rise to a new cause of action, nor does it refresh the running of the statute of limitations.

Zoll v. Jordache Enter. Inc., No. 01 Civ. 1339, 2002 U.S. Dist. LEXIS 24570, at *20 (S.D.N.Y. Dec. 24, 2002). However, "[t]he single publication rule does not apply where an item is published initially, but then is republished, not merely as a belated release of the original publication, but as a republication." Id. at *25. "[W]hether a particular event constitutes a reissue or republication so as to give rise to a new cause of action with a new period of limitations is frequently difficult to determine, depending on the facts of each case." Id. at *25-26. Under the republication rule, "the statute of limitations runs separately as to *each new product* distributed with a name or image, the use of which contravenes the statute." Cuccioli, 150 F. Supp. 2d at 573 (emphasis added). "Modification or alteration of the original is the *sine qua non* of a republication." Zoll, 2002 U.S. Dist. LEXIS 24570, at *34.

Plaintiff commenced the instant action in March 2008. Accordingly, under the single publication rule, plaintiff's claim under Section 51 regarding use of plaintiff's image on the covers of the instructional videos sold on either hairvideopass or hairvideostore is time-barred. Defendant first made the instructional videos, the material challenged in plaintiff's Section 51

9

claim, available for sale to the public on hairvideopass in 2005. In 2008, defendant made the exact same products bearing plaintiff's image and name available on hairvideostore. As such, plaintiff's claim under Section 51 regarding his image and name on the instructional videos is barred under the single publication rule. See Id. at *29 ("[T]he printing of a plaintiff's likeness on a piece of merchandise has been held subject to the single publication rule, although the statute of limitations runs anew each time plaintiff's image is sold on a different *type* of merchandise."). Accordingly, defendant's motion for summary judgment regarding plaintiff's claim under Section 51 for use of plaintiff's image on the covers of the instructional videos should be granted.

Regarding defendant's use of photographs of plaintiff on hairvideostore in 2008, plaintiff contends that such conduct was a republication that reset the statute of limitations. (Pl.'s Mem., p. 3.) In response, defendant appears to argue that such use did not constitute a republication because the same photographs were used on both defendant's hairvideostore and plaintiff's hairvideomall in 2008. (Def.'s Reply, p. 5.) However, the proper inquiry under the republication rule is whether the same photographs were used on defendant's hairvideostore in 2008 as were originally used on defendant's hairvideopass in 2005. See Id. at *31 ("the question becomes whether . . . the subsequent publications of the 1978 commercial [the original offending work] must be considered republications"). While the record demonstrates which photographs of plaintiff were used on hairvideostore by defendant in 2008, neither party has submitted evidence showing which photographs of plaintiff were used by defendant on hairvideopass in 2005. Moreover, plaintiff claims that at least one of plaintiff's photographs posted on hairvideostore in 2008 did not exist in 2005. (Docket Entry 86.) On this record, there is an issue of material fact as to whether defendant's use of plaintiff's photographs on hairvideostore in

2008 constitutes a reissuance or a republication. Accordingly, defendant's motion for summary judgment regarding plaintiff's claim under Section 51 for use of plaintiff's photographs on hairvideostore in 2008 should be denied.

Finally, defendant's instant motion does not address the single publication rule with respect to plaintiff's Section 51 claim regarding defendant's use of video clips featuring plaintiff on youtube. Therefore, defendant's motion for summary judgment regarding plaintiff's claim under Section 51 for use of plaintiff's image or voice for advertising purposes on youtube should be denied.

**B.    Statutory Exception**

Section 51 sets forth certain limited exceptions to liability. The statutory exception at issue in this case provides that:

> nothing contained in this article shall be so construed as to prevent any person, firm or corporation from using the name, portrait, picture or voice of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith.

N.Y. CIV. RIGHTS LAW § 51.

Defendant argues that he is permitted under this statutory exception to use plaintiff's name and image for the purpose of selling the instructional videos because "the two parties jointly produced" the videos. (Def.'s Mem., p. 5.) Defendant fails to cite any cases in support of his argument. Under this statutory exception, defendant would be able to use plaintiff's name and image to advertise and sell the instructional videos (which undisputedly bear plaintiff's image and name) only if plaintiff "sold or disposed of" his rights in the instructional videos to defendant. However, an issue of material fact exists as to whether plaintiff has ever "sold or disposed of" his rights in the instructional videos to defendant. Plaintiff claims that he is the sole

owner of all rights in the videos pursuant to an employment agreement that has since disappeared. Defendant claims that he and plaintiff are joint-owners of all rights in the videos. Therefore, the Court cannot conclude as a matter of law that defendant's use of plaintiff's name and image falls within this statutory exception to liability under Section 51.

In sum, defendant's motion for summary judgment should be granted as to plaintiff's Section 51 claim regarding use of plaintiff's image on the covers of the instructional videos sold on defendant's websites, as this claim is time-barred. However, defendant's motion for summary judgment should be denied as to plaintiff's Section 51 claims regarding use of photographs of plaintiff on hairvideostore in 2008 and use of video clips of plaintiff on youtube in 2008.

## III. Lanham Act Claims

Plaintiff brings claims under Section 43(a) of the Lanham Act against defendant for false endorsement, false advertising, and unfair competition.[6]

### A. False Endorsement Claim

Section 43(a)(1)(A) of the Lanham Act creates a federal cause of action for false endorsement. It is well-established that Section 43(a) "prohibit[s] misrepresentations as to the source of a product" through two types of practices: "'passing off' (also called palming off) in

---

[6] Section 43(a)(1) of the Lanham Act provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristic, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

which 'A' sells its product under 'B's' name . . . [and] 'reverse passing off,' in which 'A' sells 'B's' product under 'A's' name." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir. 1994).

> To succeed on a reverse passing off claim, [a plaintiff] must establish: (i) that the work at issue originated with the plaintiff; (ii) that the origin of the work was falsely designated by the defendant; (iii) that the false designation of origin was likely to cause consumer confusion; and (iv) that the plaintiff was harmed by the defendant's false designation of origin.

S&L Vitamins, Inc. v. Australian Gold, Inc., 521 F. Supp. 2d 188, 207-08 (E.D.N.Y. 2007) (citation omitted).

Plaintiff claims that defendant has "'pass[ed] off' the sale of [the instructional videos] on defendant's website as endorsed by their creator plaintiff Ashanta Marshall." (Am. Compl., ¶23.) Defendant argues that plaintiff cannot state a claim for passing off under Section 43(a) because "[p]laintiff has not alleged that [d]efendant has sold anything other than [p]laintiff's hairstyle instruction videos." (Def.'s Mem., p. 6.) Proceeding under either theory of liability (passing off or reverse passing off), plaintiff's false endorsement claim under Section 43(a) cannot withstand defendant's motion for summary judgment insofar as it is premised on defendant's false designation of the origin of the instructional videos.

To the extent that plaintiff bases his false endorsement claim on the passing off theory, plaintiff's claim fails because plaintiff does not allege that defendant *falsely* represented that his products originated with plaintiff. In short, defendant does not sell his own products under plaintiff's name; rather, defendant sells plaintiff's products under plaintiff's name. To the extent that plaintiff bases his false endorsement claim on the reverse passing off theory, plaintiff's claim fails because the record does not show that defendant made any representations on his websites that the instructional videos originated with defendant. See e.g. S&L Vitamins, Inc.,

521 F. Supp. 2d at 208 (dismissing reverse passing off claim where plaintiff offered no evidence that customers to defendant's website were confused as to whether plaintiff was the creator of the products).

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's false endorsement claim as it relates to any false designation of origin.

## B.   False Advertising Claim

Section 43(a)(1)(B) of the Lanham Act creates a federal cause of action for false advertising. To sustain a claim for false advertising, a plaintiff must show that:

> the challenged advertisement is literally false, i.e., false on its face, or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers. In either case, the injuries redressed in false advertising cases are the result of public deception. And under either theory, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product. Where an advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public. To succeed in a likelihood-of-confusion case where the statement at issue is not literally false, however, a plaintiff must demonstrate, by extrinsic evidence, that the challenged commercials tend to mislead or confuse consumers, and must demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement.

Tiffany, Inc. v. eBay, Inc., 600 F.3d 93, 112-13 (2d Cir. 2010) (citations and internal quotation marks omitted). The Second Circuit has also held that a plaintiff need not produce consumer survey evidence in support of a likelihood-of-confusion case if the "plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public, and the defendant's deliberate conduct in this regard is of an egregious nature." Johnson & Johnson*Merck Consumer Pharm. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992) (internal quotation marks omitted).

Plaintiff argues that defendant is liable under Section 43(a) for advertising hairvideostore on youtube and promoting the sale of the instructional videos on hairvideostore. However, plaintiff does not point to any specific false or misleading representation made by defendant on these websites concerning a material quality or characteristic of the instructional videos. The record shows that defendant used plaintiff's image on both hairvideostore and in the youtube promotion, and defendant exclaimed on hairvideostore that "Our Hair Videos Are Featured In Top Selling Magazines." (Hundley Aff., at Exhibit B.) However, to the extent that plaintiff bases his false advertising claim on this conduct, the Court finds that defendant's actions do not constitute a literally false advertisement. See S&L Vitamins, Inc., 521 F. Supp. 2d at 209 (finding that the placement of an image of manufacturer's product on retailer's websites does not constitute a literal false advertisement). Insofar as plaintiff proceeds on a likelihood-of-confusion theory, plaintiff's false advertising claim cannot withstand defendant's motion for summary judgment because plaintiff has not produced any extrinsic evidence of consumer confusion or any evidence showing that "a statistically significant part of the commercial audience" holds the alleged false belief communicated by defendant. Tiffany, Inc., 600 F.3d at 113; see S&L Vitamins, Inc., 521 F. Supp. 2d at 209-10 ("AG has not offered any consumer surveys, expert reports, or consumer complaints establishing that a substantial percentage of consumers take away the message that S&L is the creator of AG's product images."). Moreover, plaintiff has not adequately established that defendant intentionally and egregiously sought to deceive the public into believing that defendant was the creator of the instructional videos. Id.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's false advertising claim.

## C.    Unfair Competition Claim

"Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) of the Lanham Act protects registered marks." Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002). "Because of its inherently limited wording, §43(a) can never be a federal codification of the overall law of unfair competition, but can apply only to certain unfair trade practices prohibited by its text." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003) (internal quotation marks omitted). "To prevail on a claim under Section 43(a), a plaintiff must show that (1) it has a valid trademark entitled to protection, and (2) the defendant's mark infringes on the plaintiff's mark by causing a likelihood of confusion among consumers as to the origin or sponsorship of its product." Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 356 (E.D.N.Y. 2006) (citing Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 117 (2d Cir. 1999)).

Plaintiff claims that defendant has used plaintiff's unregistered trademarks, such as plaintiff's name, image, and product names on his website hairvideostore without plaintiff's permission and this has led to consumer confusion regarding plaintiff's endorsement of defendant's sale of the instructional videos on hairvideostore. (Pl.'s Mem., p. 3; Am. Compl. ¶¶35-36, 39.) Plaintiff does not allege, nor does the record reflect, that defendant has ever used plaintiff's mark Hair To Go.  In the instant motion, defendant construes plaintiff's unfair competition claim as arising only under New York common law and argues that such a claim is preempted by federal copyright law. (Def.'s Mem., pp. 7-8.) However, why defendant construes plaintiff's claim solely under New York common law is a mystery to the Court; plaintiff specifically cites to 15 U.S.C. § 1125 for his unfair competition claim.  (Am. Compl., p. 6.) Moreover, plaintiff's allegations fit squarely within an unfair competition claim under Section

43(a). See e.g., Courtenay Communs. Corp. v. Hall, No. 01 Civ. 2228 (LLM), 2007 U.S. Dist. LEXIS, at *9 (S.D.N.Y. July 20, 2007); Merck & Co. v. Mediplan Health Consulting, 425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006); Freedom Calls Found. v. Bukstel, No. 05 CV 5460 (SJ)(VVP), 2006 U.S. Dist. LEXIS 19685, at *16 (E.D.N.Y. Mar. 7, 2006); Jewish Sephardic Yellow Pages, Ltd., 478 F. Supp. 2d at 356.

Defendant moves against plaintiff's unfair competition claim solely on the grounds that the claim is preempted by the Copyright Act and does not address the issue of whether plaintiff has produced sufficient evidence to prove an unfair competition claim under Section 43(a). Defendant has not met his burden of establishing that there is no issue of material fact regarding plaintiff's unfair competition claim. Although plaintiff's ability to prove his claim under Section 43(a) may be in doubt,[7] defendant's instant motion for summary judgment on plaintiff's unfair competition claim should be denied.

## D.    Cybersquatting Claim

In addition to claiming that defendant used his name, image, and product names on the website, plaintiff claims that defendant's "imposter website Hairvideostore.com is named and

---

[7] Plaintiff asserts an unfair competition claim based on defendant's use of plaintiff's unregistered trademarks, such as his name, image, and product names. For an unregistered mark to be protectable under Section 43(a), the mark must be "inherently distinctive, i.e., intrinsically capable of identifying its source, or . . . ha[ve] acquired secondary meaning." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115-16 (2d Cir. 2006) (internal quotation marks omitted). Moreover, when a "mark is unregistered . . . the burden is on the plaintiff to prove the mark is . . . valid." Courtenay Communs. Corp. v. Hall, 334 F.3d 210, 217 (2d Cir. 2003) (internal quotation marks omitted). "Personal names and photographs are not inherently distinctive, and therefore are 'protected only if, through usage, they have acquired distinctiveness and secondary meaning.'" Brooks v. Topps Co., No. 06 CIV. 2359 (DLC), 2007 U.S. Dist. LEXIS 94036, at *19 (S.D.N.Y. Dec. 21, 2007) (quoting Pirone, 894 F.2d at 583). "The crucial question in a case involving secondary meaning always is whether the public is moved in any degree to buy an article because of its source. Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 n. 4 (2d Cir. 1997) (citation and internal quotation marks omitted).

designed to look exactly like Plaintiff Ashanta Marshall's official website Hairvideomall.com."[8]

(Am. Compl., ¶35.) Although plaintiff presents this claim as one of unfair competition under the

Lanham Act and does not specifically cite to 15 U.S.C. § 1125(d), the Court liberally construes

*pro se* plaintiff's claim as arising under the Anti-Cybersquatting Consumer Protection Act

("ACPA"). "[T]he ACPA was designed to focus on individuals who . . . register well-known

marks to prey on consumer confusion by misusing the domain name to divert customers from the

mark's owner's site to the cybersquatter's own site, and target distinctive marks to defraud

consumers, including to engage in counterfeiting activities." Albert Furst von Thurn und Taxis

v. Karl Prince von Thurn und Taxis, No. 04 Civ. 6107 (DAB), 2006 U.S. Dist. LEXIS 56703, at

*36-37 (S.D.N.Y. Aug. 8, 2006) (internal quotation marks and citation omitted). "To establish a

claim of cybersquatting under the ACPA, a plaintiff must show (1) that the defendant's domain

is either (a) dilutive of a famous mark or (b) identical or confusingly similar to a distinctive

trademark; and (2) that the defendant has a bad faith intent to profit from that mark." PGC Prop.

LLC v. Wainscott/Sagaponack Prop. Owners, Inc., 250 F. Supp. 2d 136, 143 (E.D.N.Y. 2003)

(internal quotation marks and citation omitted).

Defendant's instant motion for summary judgment does not address plaintiff's claim

under the ACPA; therefore, plaintiff's claim under the ACPA should proceed.[9]

## IV.    Intentional Infliction of Emotional Distress Claim

Plaintiff claims that defendant intentionally inflicted emotional distress upon him and is

liable under New York common law.  To state a claim for intentional infliction of emotional

distress under New York law, a plaintiff must show: "(1) extreme and outrageous conduct; (2)

---

[8] The instant record demonstrates that plaintiff registered his domain name about four years before defendant registered his domain name. (Hundley Aff., at Exhibits B, C.)

[9] As defendant has not moved against plaintiff's ACPA claim, the Court need not address the sufficiency of plaintiff's claim at this juncture.

intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citation omitted). "The standard of outrageousness is an objective one; even if the defendant is aware of some peculiar susceptibility of the plaintiff to emotional distress, the conduct must still be objectively outrageous to be actionable." Netzer v. Continuity Graphic Assoc., Inc., 963 F. Supp. 1308, 1327 (S.D.N.Y. 1997).

In support of his claim for intentional infliction of emotional distress, plaintiff points to the following conduct: defendant's alleged theft in July 2005 of the instructional videos and computer hard drive from the Abode Salon; defendant's promotion and sale of the instructional videos on various websites from 2005 to 2008; defendant's interference with plaintiff's business by communicating with industry publications; and a threatening phone call made by defendant's roommate. (Am. Compl. ¶¶80-95; Pl.'s Mem., pp. 29-30.) Plaintiff contends that defendant's actions, taken as a whole, amount to a "constant and ongoing campaign of harassment against his older brother [that] would be accepted as extreme and outrageous by any jury." (Pl.'s Mem., p. 6.)

Even when viewed in the light most favorable to plaintiff, the record does not demonstrate conduct that is sufficiently extreme and outrageous to give rise to an intentional infliction of emotional distress claim, no matter how distressed plaintiff himself may be. There

is no record evidence to support the allegation in the amended complaint that defendant stole the videos and hard drive from the Abode Salon in 2005. The record reflects that defendant did not make the threatening phone call to plaintiff on February 12, 2008. Moreover, defendant's challenged conduct which has caused plaintiff's emotional distress relates solely to defendant's distribution and sale of the instructional videos that he helped produce.

Although the Court understands that this matter has caused the Marshall family considerable heartache, plaintiff has failed to show that defendant's conduct was objectively extreme and outrageous. Accordingly, defendant's motion for summary judgment should be granted on plaintiff's intentional infliction of emotional distress claim.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendant's motion for summary judgment should be granted in part and denied in part. Defendant's motion for summary judgment should be granted on plaintiff's Section 51 claim, as it relates to the use of plaintiff's image on the covers of the instructional videos sold on defendant's websites, plaintiff's false endorsement and false advertising claims under Section 43(a), and plaintiff's intentional infliction of emotional distress claim. Defendant's motion for summary judgment should be denied on plaintiff's Section 51 claim, as it relates to the use of plaintiff's image on hairvideostore and youtube in 2008, and plaintiff's unfair competition claim under Section 43(a). Finally, plaintiff's cybersquatting claim under the ACPA should proceed, as defendant's instant motion does not address that claim.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: December 7, 2010
      Brooklyn, New York